NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:22-mj-00198** |
| **v.** | **GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** |
| **ADOLFO MARTINEZ, JR. and CARLOS ALBERTO MARTINEZ,** | |
| **Defendants.** | |

The United States of America, through Natalie K. Wight, United States Attorney for the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court to detain the defendants pending arraignment and trial.

The defendants were caught transporting over 38 kilograms of cocaine worth more than $1.1 million dollars. This was a substantial seizure that the defendants had picked up in Southern California and indicates that they were part of a much larger criminal enterprise. The

///

defendants are both a risk of non-appearance at future court proceedings and a danger to the community and should be detained pending trial.

**A. Factual and Procedural Summary.**

Defendants are currently charged in a Criminal Complaint with engaging in a Conspiracy to Distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine and Possession with the Intent to Distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, all in violation of Title 21, United States Code, Section 841(a)(1), 841(B)(1)(A), and 846. The charge carries with it a mandatory minimum sentence of 10 years' imprisonment and a maximum term of Life imprisonment.

On November 3, 2022, at approximately 1:00 p.m., a Oregon State Trooper and DEA Task Force Officer (TFO) stopped a BMW traveling northbound on I-5 based on a traffic violation. The car was eventually moved to a location off of the freeway. During the stop, the TFO identified the driver as Adolfo MARTINEZ, Jr. via his Washington Driver's License. Adolfo MARTINEZ, Jr. stated that he and the passenger, Carlos Alberto MARTINEZ, his brother, recently returned from a week-long trip to Southern California, where they stayed at a hotel. The defendants said they were traveling back to Renton, Washington, where both reside. The TFO had received information that the car had in fact only been in Southern California for a couple of days. The TFO noted there was a tan-colored bag in the back seat of the vehicle, which Adolfo MARTINEZ, Jr. claimed it only contained their clothing. Both Adolfo MARTINEZ, Jr. and Carlos Alberto MARTINEZ told the TFO that everything in the car was theirs. Both the driver and passenger were asked to step out of the car.

///

The TFO subsequently deployed his trained narcotics detecting K-9 "Titan" around the BMW. Shortly thereafter, the K-9 demonstrated a positive alert to the presence of the odor of narcotics emanating from the vehicle. Following the positive K-9 alert, the TFO searched the car. The TFO first looked inside of the tan-colored bag in the back seat. Inside, the tan-colored bag in the back seat the TFO located a loaded 10mm caliber Glock handgun. Within the same bag, the TFO also located two additional fully loaded 10mm caliber magazines. Adolfo MARTINEZ, Jr. told the TFO that the gun was his and that he had a permit for it.

During a search of the trunk, the TFO observed various nutrition supplements, a case of energy drinks, a backpack, an Igloo cooler, and a suitcase. The TFO searched the backpack, Igloo cooler, and the suitcase, and located 38 separate plastic-wrapped and vacuum-sealed packages containing a white substance. The 38 packages, while having different markings, all appeared to be approximately the same size. Approximately five of the packages were weighed individually and each ranged between 1,150 to 1,250 grams each. The packages were all wrapped in plastic and appeared to be coated in grease, which is commonly used by traffickers to attempt to hide the odor of the cocaine. The suspected drugs were seized and, in total with DEA packaging, weighing approximately 44,000 grams. Later, investigators field-tested nine (9) of the 38 packages each of which provided a presumptive positive result for the presence of cocaine, a Schedule II controlled substance. Both defendants were arrested and the Drug Enforcement Administration (DEA) in Salem, Oregon was called in to assist. Pictures of the seized drugs are below:

///

///

///






Based upon the case agent's training and experience, he knows that approximately 38 kilograms of cocaine indicates it is possessed for purposes of further distribution. Furthermore, the way the cocaine was packaged in kilogram bags is also indicative of possession with the

intent to distribute. Between larger dealers, a kilogram of cocaine can sell for between $30,000 to $40,000 a kilogram and given its valuable nature, drugs in large quantities such as this are not given or entrusted to unwitting individuals. While this price is subject to fluctuation, approximately 38 kilograms of cocaine has a rough value of between $1.1 and $1.5 million dollars.

The government seeks the defendants' detention as a danger to the community and a risk of nonappearance.

**B. Applicable Law.**

**1. Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

**2. Rebuttable Presumption of Detention**

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10

years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant **might** engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. **The committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of

> criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id*. Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**C. Factors Supporting Detention.**

The defendants should be detained pending trial as both a danger to the community and a risk of nonappearance. The defendants were caught with more than 38 kilograms of cocaine – this is a substantial amount of cocaine and indicates that the defendants were part of a much larger criminal organization. They have no ties to Oregon. And, today, some criminal organization out there has lost over $1.1 million dollars-worth of cocaine and such losses are not forgotten or simply written off without severe consequences. Someone will expect and demand that the defendants make up that loss and that typically requires them to return to drug trafficking. The defendants' criminal conduct demonstrates that they are a danger to the public

and that they will not abide by the law. It would be unrealistic to hope that anything short of pretrial detention will prevent them from continuing to engage in drug dealing or show up for future court appearances.

**1. Nature and Circumstances of the Offense.**

The defendants were caught transporting over 38 kilograms of cocaine. This is a substantial amount. Drug dealers like the defendants are exactly the people Congress warned us about and why they created the presumption of detention in these cases. Dealers like the defendants make their living from drug dealing and are prone to go back to it when they are released from custody. That high risk of pretrial recidivism warrants their continued detention. In this case the defendants are responsible for the loss of over $1.1 million dollars of drugs and some organization somewhere is not going to be pleased about losing that money. The high value of the cocaine also explains why the defendants had a gun in the car with them – which was to protect the drugs from being stolen and also increases the risk and danger to the public.

In this case either the defendants put up their own money to buy the drugs, which under the circumstances is highly unlikely, or they were transporting drugs to someone else and either the intended recipient or the seller is responsible for the cost of the drugs. That recipient or seller is out over $1.1 million dollars and they are going to want their money. That demand, to make good on the loss that was suffered, creates an incredible pressure on these defendants to return to drug dealing – a pressure that a Court order to abide by the law will not overcome. The nature and circumstances of the offense warrant the defendants pretrial detention.

**2. Weight of the Evidence.**

The weight of the evidence against the defendants is extremely strong and supports their continued detention. The Court reviewed the case agent's affidavit in support of the criminal

complaint late last night and is familiar with the facts. These defendants were caught with over 38 kilograms of cocaine in their car, cocaine that was intended for further distribution. They should be detained.

**3. History and Characteristics of the Defendant.**

The history and characteristics of the defendants also warrants their pretrial detention. The defendants were active drug dealers with no real ties to Oregon. While not much is known about the defendants right now we do know that they reside in Washington and traveled to Southern California to pick up a substantial quantity of drugs that they were transporting back to an unknown location in either Oregon or Washington. Given the amount of drugs these defendants were obviously trusted members of a larger criminal organization. They should be detained.

**4. Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing activities, by themselves, are extremely serious. Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers like the defendant pose to the community and their risk of going back to drug dealing even while on pretrial release – a risk that is incredibly large in this case given the loss these defendants are responsible for. There is simply no condition or combination of conditions that the Court will impose that will mitigate the risk that the defendants will go back to distributing drugs within the community. The defendants should be detained.

**Conclusion**

For the reasons set forth herein, we respectfully request that the Court continue to detain the defendants pending their arraignment and trial and find they poses an unacceptable risk of non-appearance at future court hearings and that they are a danger to the community.

We ask the Court to find that:

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendants as required.

- The defendants have not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendants' drug trafficking, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendants were released.

- Due to the weight of the evidence and the defendants' personal history and characteristics, including the potential penalties they are facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendants at future court hearings as required if released from custody.

Based upon the above findings, the defendants should be detained pending trial.

Dated: November 4, 2022.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ Scott Kerin

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney